STOREY & MILLER
COURT REPORTERS
818 W. FIVE   DE
SUITE 102
SPOKANE, WA 99201

**ORIGINAL**

The Honorable Robert Whaley

MICHAEL MADDEN
BENNETT BIGELOW & LEEDOM, P.S.
999 Third Avenue, Suite 2150
Seattle, Washington 98104-4036
(206) 622-5511
**Attorneys for Defendants
Rhay and Conte**

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

APR 20 1999

JAMES R. LARSEN, CLERK
_____ DEPUTY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ROBERT E. WHITE, et al.,

    Plaintiffs,

vs.

DR. C. ALVIN PAULSEN, et al.,

    Defendants.

_____

DON BYERS, et al.,

    Plaintiffs,

vs.

C. ALVIN PAULSEN, M.D., et al.,

    Defendants.

NO. CS-97-0239 RHW

DEFENDANTS PAULSEN'S, RHAY'S AND CONTE'S SUPPLEMENTAL RESPONSE TO PLAINTIFFS' MOTION TO CERTIFY APPEAL AS FRIVOLOUS

    Defendants wish to call to the Court's attention two recent developments which are relevant to plaintiffs' pending motion to certify defendants' qualified immunity appeal as frivolous.

SUPPLEMENTAL RESPONSE- Page 1

1. As plaintiffs note, the Ninth Circuit has issued an Order to show cause why the appeal should not be dismissed for lack of jurisdiction. Although the Circuit apparently based its Order on the belief that the appeal involved a decision disposing of less than all claims as less than all parties, the result of the Order will be to put before the Court of Appeals the question of whether there is appellate jurisdiction to review the denial of qualified immunity. Despite plaintiffs' argument to the contrary, defendants submit that, inasmuch as that question subsumes the issue before this Court in connection with plaintiffs' motion to certify the appeal as frivolous, defendants' respectfully suggest that (a) this Court should defer ruling on plaintiffs' motion until after the Circuit determines its own jurisdiction; and (b) the Court of Appeals' ruling will dispose of the arguments raised by plaintiffs here.

2. On April 5, 1999, the United States Supreme Court decided *Conn v. Gabbert*, --- U.S. --- (1999 WL 181181, No. 97-1802) (copy attached). In that case, a unanimous Court reversed a decision of the Ninth Circuit denying qualified immunity. Specifically, the Court held that the Court of Appeals had erred in denying qualified immunity based on extrapolations from cases stating broad and general principles of constitutional law. Where no case "even came close" to prohibiting the allegedly unconstitutional conduct at issue, it was error to deny immunity. 1999 WL at 181181, *4. With all respect to this Court's decision to deny immunity in this case, *Conn*

SUPPLEMENTAL RESPONSE Page 2

LAW OFFICES
BENNETT BIGELOW &
LEEDOM, P.S.
999 Third Avenue, Suite 2150
Seattle, Washington 98104

reaffirms the substantial nature of defendants' argument that the admittedly "significant" factual and doctrinal differences between this case and *Stadt v. University of Rochester*, 921 F.Supp 1023 (W.D.N.Y. 1996) (and the cases cited therein) prohibit a finding that defendants violated clearly established law.

For these additional reasons, this Court should deny plaintiffs' motion.

Dated this 8th day of April 1999.

BENNETT BIGELOW & LEEDOM, P.S.

By _____
Michael Madden, WSBA #8747
999 Third Avenue, Suite 2150
Seattle, WA 98104-4036
(206) 622-5511
Attorneys for Defendants Rhay and Conte

WILSON SMITH COCHRAN & DICKERSON

By _____
John D. Wilson, Jr. WSBA # 04828
Special Assistant Attorney General for
Defendant Paulsen

SUPPLEMENTAL RESPONSE - Page 3

--- S.Ct. ---
(Cite as: 1999 WL 181181 (U.S.))

Page 1

David CONN and Carol Najera, petitioners,
v.
Paul L. GABBERT.

No. 97-1802.

Supreme Court of the United States

Argued Feb. 23, 1999.

Decided April 5, 1999.

Attorney for grand jury witness in state criminal trial brought § 1983 civil rights action against county prosecutors, alleging his Fourteenth Amendment right to practice his profession was violated when prosecutors executed search warrant at same time his client was testifying. The United States District Court for the Central District of California, Lew, J., granted summary judgment for defendants, and attorney appealed. The United States Court of Appeals for the Ninth District, 131 F.3d 793, reversed. Certiorari was granted. The Supreme Court, CHIEF JUSTICE Rehnquist, held that: (1) attorney's Fourteenth Amendment right to practice his calling was not violated by search; (2) client had no right to have attorney present during grand jury proceeding; and (3) attorney lacked standing to raise issue of infringement of client's alleged right to have attorney present outside grand jury room.

Reversed.

Justice Stevens filed separate opinion concurring in judgment.

[1] CIVIL RIGHTS ⚖=214(2)
78k214(2)
In order to overcome the defense of qualified immunity in a § 1983 action for civil damages from a government official performing discretionary functions, the plaintiff is required to show that the official violated clearly established statutory or constitutional rights of which a reasonable person would have known. 42 U.S.C.A. § 1983.

[2] CONSTITUTIONAL LAW ⚖=319.5(1)
92k319.5(1)
Attorney's Fourteenth Amendment right to practice his profession without unreasonable government interference was not violated when county prosecutors executed warrant to search him while his client was testifying before grand jury. U.S.C.A. Const.Amend. 14.

[2] SEARCHES AND SEIZURES ⚖=145.1
349k145.1
Attorney's Fourteenth Amendment right to practice his profession without unreasonable government interference was not violated when county prosecutors executed warrant to search him while his client was testifying before grand jury. U.S.C.A. Const.Amend. 14.

[3] CONSTITUTIONAL LAW ⚖=275(1)
92k275(1)
Although liberty component of Fourteenth Amendment's due process clause includes some generalized right to choose one's field of private employment, this right is subject to reasonable government regulation. U.S.C.A. Const.Amend. 14.

[4] CONSTITUTIONAL LAW ⚖=275(1)
92k275(1)
Fourteenth Amendment's liberty right to choose and follow one's calling is not infringed by inevitable interruptions of our daily routine as result of legal process which all of us may experience from time to time. U.S.C.A. Const.Amend. 14.

[5] GRAND JURY ⚖=36.6
193k36.6
A grand jury witness has no constitutional right to have counsel present during the grand jury proceeding.

[6] CIVIL RIGHTS ⚖=202
78k202
Attorney, who brought § 1983 action against county prosecutors alleging that his right to practice his profession was violated when warrant to search him was executed while his client was testifying before grand jury, had no standing to raise infringement of his client's alleged right to have attorney present outside grand jury room. 42 U.S.C.A. § 1983.

[7] CONSTITUTIONAL LAW ⚖=319.5(1)
92k319.5(1)
Attorney's claim challenging reasonableness of county prosecutors' execution of warrant to search him, which was executed while his client was testifying before grand jury, arose under Fourth Amendment, not Fourteenth Amendment. U.S.C.A. Const.Amends. 4, 14.

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

[7] SEARCHES AND SEIZURES ⚖=145.1
349k145.1
Attorney's claim challenging reasonableness of county prosecutors' execution of warrant to search him, which was executed while his client was testifying before grand jury, arose under Fourth Amendment, not Fourteenth Amendment. U.S.C.A. Const.Amends. 4, 14.

Syllabus [FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

*1 Petitioners Conn and Najera, prosecutors in the "Mcnendez Brothers" case on retrial, learned that Lyle Menendez had written a letter to Traci Baker, in which he may have instructed her to testify falsely at the first trial. Baker was subpoenaed to testify before a grand jury and to produce any correspondence that she had received from Menendez. She later responded that she had given Menendez's letters to her attorney, respondent Gabbert. When Baker appeared to testify before the grand jury, accompanied by Gabbert, Conn directed police to secure a warrant to search Gabbert for the letter. At the same time that Gabbert was being searched, Najera called Baker before the grand jury for questioning. Gabbert brought suit against the prosecutors under 42 U.S.C. § 1983, contending, inter alia, that his Fourteenth Amendment right to practice his profession without unreasonable government interference was violated when the prosecutors executed a search warrant at the same time his client was testifying before the grand jury. The Federal District Court granted petitioners summary judgment, but the Ninth Circuit reversed in part, holding that Gabbert had a right to practice his profession without undue and unreasonable government interference, and that because the right was clearly established, petitioners were not entitled to qualified immunity.

Held: A prosecutor does not violate an attorney's Fourteenth Amendment right to practice his profession by executing a search warrant while the attorney's client is testifying before a grand jury. To prevail in a § 1983 action for civil damages from a government official performing discretionary functions, the qualified immunity defense requires that the official be shown to have violated clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396. There is no support in this Court's cases for the Ninth Circuit's conclusion that the prosecutors' actions in this case deprived Gabbert of a liberty interest in practicing law. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 578, 92 S.Ct. 2701, 33 L.Ed.2d 548; Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042. The cases relied upon by the Ninth Circuit or suggested by Gabbert all deal with a complete prohibition of the right to engage in a calling, and not the sort of brief interruption as a result of legal process which occurred here. See, e.g., Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623. Gabbert's argument that the search's improper timing interfered with his client's right to have him outside the grand jury room and available to consult with her is unavailing, since a grand jury witness has no constitutional right to have counsel present during the proceeding, and none of this Court's decisions has held that such a witness has a right to have her attorney present outside the jury room. This Court need not decide whether such a right exists, because Gabbert had no standing to raise the alleged infringement of his client's rights. Although he does have standing to complain of the allegedly unreasonable timing of the search warrant's execution to prevent him from advising his client, challenges to the reasonableness of the execution of a search warrant must be assessed under the Fourth Amendment, not the Fourteenth, see Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443. Pp. ---- - ----.

*2 131 F.3d 793, reversed.

REHNQUIST, C. J., delivered the opinion of the Court, in which O'CONNOR, SCALIA, KENNEDY, SOUTER, THOMAS, GINSBURG, and BREYER, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment.

Kevin C. Brazile, Los Angeles, CA, for petitioners.

Michael J. Lightfoot, Los Angeles, CA, for respondent.

For U.S. Supreme Court Briefs See:

1998 WL 802041 (Pet.Brief)

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

--- S.Ct. ---    Page 3
(Cite as: 1999 WL 181181 (U.S.))

1998 WL 889830 (Resp.Brief)

1999 WL 21263 (Reply.Brief)

1998 WL 813665 (Amicus.Brief)

1998 WL 886727 (Amicus.Brief)

For Transcript of Oral Argument See:

1999 WL 118342 (U.S.Oral.Arg.)

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

We granted certiorari in this case, 525 U.S. ----, 119 S.Ct. 39, 142 L.Ed.2d 30 (1998), to decide whether a prosecutor violates an attorney's Fourteenth Amendment right to practice his profession when the prosecutor causes the attorney to be searched at the same time his client is testifying before a grand jury. We conclude that such conduct by a prosecutor does not violate an attorney's Fourteenth Amendment right to practice his profession.

This case arises out of the high-profile California trials of the "Menendez Brothers," Lyle and Erik Menendez, for the murder of their parents. Petitioners David Conn and Carol Najera are Los Angeles County Deputy District Attorneys, and respondent Paul Gabbert is a criminal defense attorney. In early 1994, after the first Menendez trial ended in a hung jury, the Los Angeles County District Attorney's Office assigned Conn and Najera to prosecute the case on retrial. Conn and Najera learned that Lyle Menendez had written a letter to Traci Baker, his former girlfriend, in which he may have instructed her to testify falsely at trial. Gabbert represented Baker, who had testified as a defense witness in the first trial. Conn obtained and served Baker with a subpoena directing her to testify before the Los Angeles County grand jury and also directing her to produce at that time any correspondence that she had received from Lyle Menendez. After Gabbert unsuccessfully sought to quash the portion of the subpoena directing Baker to produce the Menendez correspondence, Conn and Najera obtained a warrant to search Baker's apartment for any such correspondence. When police tried to execute the warrant, Baker told the police that she had given all her letters from Menendez to Gabbert.

Three days later, on March 21, 1994, Baker appeared as directed before the grand jury, accompanied by Gabbert. Believing that Gabbert might have the letter on his person, Conn directed a police detective to secure a warrant to search Gabbert. California law provides that a warrant to search an attorney must be executed by a court-appointed special master. When the Special Master arrived, Gabbert requested that the search take place in a private room. He did not request that his client's grand jury testimony be postponed. The Special Master searched Gabbert in the private room, and Gabbert produced two pages of a three-page letter from Lyle Menendez to Baker.

At approximately the same time that the search of Gabbert was taking place, Najera called Baker before the grand jury and began to question her. After being sworn, Najera asked Baker whether she was acquainted with Lyle Menendez. Baker replied that she had been unable to speak with her attorney because he was "still with the special master." Brief for Petitioners 6. A short recess was taken during which time Baker was unable to speak with Gabbert. He was aware that Baker sought to speak with him, but apparently stated that the prosecutors would simply have to delay the questioning until they finished searching him. Baker returned to the grand jury room and declined to answer the question "upon the advice of my counsel" on the basis of her Fifth Amendment privilege against self-incrimination. Id., at 7. Najera asked a follow-up question, and Baker again asked for a short recess to confer with Gabbert. Baker was again unable to locate Gabbert, and she again returned to the grand jury room and asserted her Fifth Amendment privilege. At this point, the grand jury recessed.

*3 Believing that the actions of the prosecutors were illegal, Gabbert brought suit against them and other officials in Federal District Court under Rev. Stat. § 1979, 42 U.S.C. § 1983. Relevant to this appeal by Conn and Najera, he contended that his Fourteenth Amendment right to practice his profession without unreasonable government interference was violated when the prosecutors executed a search warrant at the same time his client was testifying before the grand jury. [FN*] Conn and Najera moved for summary judgment on the basis of qualified immunity, and the District Court granted the motion.

04/20/99 07:27 FAX 206 6228986     BENNETT BIGELOW LEEDOM     ☒008
Case 2:97-cv-00239-RHW   ECF No. 249   filed 04/20/99   PageID.288   Page 7 of 9

--- S.Ct. ----
(Cite as: 1999 WL 181181, *3 (U.S.))

Page 4

FN* Gabbert also brought a claim under § 1983 that Conn and Najera had violated his rights under the Fourth Amendment. That claim is not before us and we express no opinion on it.

The Court of Appeals reversed in part, holding that Conn and Najera were not entitled to qualified immunity on Gabbert's Fourteenth Amendment claim. 131 F.3d 793 (C.A.9 1997). Relying on Board of Regents of State Colleges v. Roth, 408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and earlier cases of this Court recognizing a right to choose one's vocation, the Court of Appeals concluded that Gabbert had a right to practice his profession without undue and unreasonable government interference. 131 F.3d, at 800. The Court of Appeals also held that based upon notions of " 'common sense,' " id., at 801, the right allegedly violated in this case was clearly established, and as a result, Conn and Najera were not entitled to qualified immunity: "The plain and intended result [of the prosecutors' actions] was to prevent Gabbert from consulting with Baker during her grand jury appearance. These actions were not objectively reasonable, and thus the prosecutors are not protected by qualified immunity from answering Gabbert's Fourteenth Amendment claim." Id., at 802-803. We granted certiorari, 525 U.S. ---, 119 S.Ct. 39, 142 L.Ed.2d 30 (1998), and now reverse.

[1] Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights. 42 U.S.C. § 1983. In order to prevail in a § 1983 action for civil damages from a government official performing discretionary functions, the defense of qualified immunity that our cases have recognized requires that the official be shown to have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation. See Siegert v. Gilley, 500 U.S. 226, 232-233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); see also County of Sacramento v. Lewis, 523 U.S. 833, 841, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

*4 [2] We find no support in our cases for the conclusion of the Court of Appeals that Gabbert had a Fourteenth Amendment right which was violated in this case. The Court of Appeals relied primarily on Board of Regents v. Roth. In Roth, this Court repeated the pronouncement in Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042, (1923) that the liberty guaranteed by the Fourteenth Amendment " 'denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.' " Roth, supra, at 572, 92 S.Ct. 2701 (quoting Meyer, supra, at 399, 43 S.Ct. 625). But neither Roth nor Meyer even came close to identifying the asserted "right" violated by the prosecutors in this case. Meyer held that substantive due process forebade a State from enacting a statute that prohibited teaching in any language other than English. 262 U.S., at 399, 402-403, 43 S.Ct. 625. And Roth was a procedural due process case which held that an at-will college professor had no "property" interest in his job within the meaning of the Fourteenth Amendment so as to require the university to hold a hearing before terminating him. 408 U.S., at 578, 92 S.Ct. 2701. Neither case will bear the weight placed upon it by either the Court of Appeals or Gabbert: Neither case supports the conclusion that the actions of the prosecutors in this case deprived Gabbert of a liberty interest in practicing law.

[3] Similarly, none of the other cases relied upon by the Court of Appeals or suggested by Gabbert provide any more than scant metaphysical support for the idea that the use of a search warrant by government actors violates an attorney's right to practice his profession. In a line of earlier cases, this Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation. See, e.g., Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889) (upholding a requirement of licensing before a person can practice medicine); Truax v. Raich, 239 U.S. 33, 41, 36 S.Ct. 7, 60 L.Ed. 131 (1915) (invalidating on equal protection grounds a state law

--- S.Ct. ----    Page 5
(Cite as: 1999 WL 181181, *4 (U.S.))

requiring companies to employ 80% United States citizens). These cases all deal with a complete prohibition of the right to engage in a calling, and not the sort of brief interruption which occurred here.

*5 [4] Gabbert also relies on Schware v. Board of Bar Examiners of N. M., 353 U.S. 232, 238-239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), for the proposition that a State cannot exclude a person from the practice of law for reasons that contravene the Due Process Clause. Schware held that former membership in the Communist Party and an arrest record relating to union activities could not be the basis for completely excluding a person from the practice of law. Like Dent, supra, and Truax, supra, it does not deal with a brief interruption as a result of legal process. No case of this Court has held that such an intrusion can rise to the level of a violation of the Fourteenth Amendment's liberty right to choose and follow one's calling. That right is simply not infringed by the inevitable interruptions of our daily routine as a result of legal process which all of us may experience from time to time.

[5][6] Gabbert next argues that the improper timing of the search interfered with his client's right to have him outside the grand jury room and available to consult with her. A grand jury witness has no constitutional right to have counsel present during the grand jury proceeding, United States v. Mandujano, 425 U.S. 564, 581, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976), and no decision of this Court has held that a grand jury witness has a right to have her attorney present outside the jury room. We need not decide today whether such a right exists, because Gabbert clearly had no standing to raise the alleged infringement of the rights of his client Tracy Baker. "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

[7] Gabbert of course does have standing to complain of the allegedly unreasonable timing of the execution of the search warrant to prevent him from advising his client. In essence then, he argues that the prosecutors searched him in an unreasonable manner. We have held that where another provision of the Constitution "provides an explicit textual source of constitutional protection," a court must assess a plaintiff's claims under that explicit provision and "not the more generalized notion of 'substantive due process.'" Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Challenges to the reasonableness of a search by government agents clearly fall under the Fourth Amendment, and not the Fourteenth.

We hold that the Fourteenth Amendment right to practice one's calling is not violated by the execution of a search warrant, whether calculated to annoy or even to prevent consultation with a grand jury witness. In so holding, we thus of course pretermit the question of whether such a right was "clearly established" as of a given day. The judgment of the Court of Appeals holding to the contrary is therefore reversed.

*6 It is so ordered.

Justice STEVENS, concurring in the judgment.

Respondent claims that petitioners violated his constitutional right to practice his profession by unreasonably timing the service and execution of a warrant to search his papers. There is, however, no evidence that respondent's income, reputation, clientele, or professional qualifications were adversely affected by the search. Nor is there any real evidence or allegation that respondent's client was substantially prejudiced by what occurred. See App. to Pet. for Cert. B-17. Accordingly, despite the shabby character of petitioners' conduct, I agree with the Court that it did not deprive respondent of liberty or property in violation of the Fourteenth Amendment.

My conclusion that the judgment of the Court of Appeals must be reversed is reached independently of the question whether petitioners may have violated the Fourth Amendment because their method of conducting the search was arguably unreasonable--an issue not squarely presented and argued by petitioners in this Court. If their conduct had violated the Due Process Clause of the Fourteenth Amendment, there is no reason why such a violation would cease to exist just because they also violated some other constitutional provision. Thus the suggestion in the penultimate paragraph of the Court's opinion--that the possible existence of a second source of constitutional protection provides a sufficient reason for reversal, ante, at ---- - ---- --is

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

--- S.Ct. ---  
(Cite as: 1999 WL 181181, *6 (U.S.))

Page 6

quite unpersuasive. Indeed, if that ground for decision were valid, most of the reasoning in the preceding pages of the Court's opinion would be unnecessary to the decision.

END OF DOCUMENT

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works